IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00468-REB-MEH

DONALD GILLISON,

    Applicant,

v.

TIM HAND, and
COLORADO BOARD OF PAROLE,

    Respondents.

---

# RECOMMENDATION ON APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

---

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

    Applicant Donald Gillison ("Applicant") has pending before this Court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, construed by this Court as an Application pursuant to 28 U.S.C. § 2241 ("Application") [doc #3]. Respondents timely filed their "Return" (or, Response) [doc #9] together with certain documents appended as exhibits. Although Applicant was granted time within which to file a "Traverse" (or, Reply) [doc #15], Applicant did not file such Reply. Under the provisions of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation. Based on the record contained herein, I **recommend**[1] that the Application be denied, and that this matter be dismissed with prejudice.

---

[1] The parties are advised that they shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §

## BACKGROUND

Applicant is currently incarcerated at the Limon Correctional Facility of the Colorado Department of Corrections ("CDOC"). In 1999, Gillison was sentenced to fourteen (14) years imprisonment for a conviction of Second Degree Burglary of a Dwelling, and to six (6) years imprisonment for a conviction of Homicide/Manslaughter. Response, Exh. A-2. As a result, Gillison's parole eligibility date was calculated to be April 29, 2007. *Id.*, Exh. A-1 at ¶ 5.

In preparation for that date, Gillison met with Allan Stanley, former Chairman of the Colorado State Board of Parole ("Parole Board"), on or about February 20, 2007 for an interview to determine whether Gillison should be recommended for parole. Exh. A-1 at ¶ 6. After the interview, the Parole Board decided to defer Gillison's next parole determination to February 2008. *Id.* at ¶ 7. The Board based its decision on the interview with Gillison, on "aggravating factors" listed as "circumstances of offense (including Homicide/Manslaughter), needs more time," and on two disciplinary infractions committed by Gillison in the previous year. *Id.* at ¶¶ 7, 8; *see also* Exh. A-2.

## PROCEDURAL HISTORY

Gillison filed the within Application on March 9, 2007, alleging that Respondents denied him due process when, on February 20, 2007, he "was not afforded (any and all information) that [he] had requested from Allen Stanley . . . so that [he] was to know what the Board was going to use in order to consider my parole." Application at 5. In addition, Gillison claims that Respondents denied him equal protection of the laws when he "was intentional [sic] singled out, because of [his] mental disabilitys [sic], was denied the right to take part in state programs, because of [his] disabilitys [sic]."

---

636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

33 *Id.* at 6. As relief for these alleged violations, Gillison requests "that a complete evidentiary hearing be held before this Honorable Court," and "that legal counsel be appointed to represent petitioner's rights before the court because of my mental disabilitys [sic]." *Id.* at 9.

On April 11, 2007, Respondents answered arguing that Gillison has no federal or state rights to a hearing for the determination of parole, nor to prior disclosure of evidence to be considered at the interview, nor to a detailed explanation of the reason for denial of a parole application. Response at 3-4. Further, Respondents contend that a rational basis exists for the decision to deny parole, considering the reasons listed in Exhibit A-2. *Id.* at 7-8. Respondents claim that there is no evidence demonstrating that the Parole Board members had any knowledge of Gillison's "unspecified mental disabilities," or that such "disabilities" had any impact on the decision to deny parole. *Id.* at 8.

Although given the opportunity to do so, Gillison did not file a Reply ("Traverse") to the Response. Instead, nearly five and a half months later, Gillison filed an "Amended Petition" without leave of court in violation of Fed. R. Civ. P. 15(a). In the amendment, Gillison contends that "Respondents intentional [sic] filed a fraud on the Court," since Gillison has "fundamental rights under state law to be provide [sic] a parole hearing" and there is "no appeal process." Doc. #36 at 2. Gillison further repeats his requests for relief listed in the Application, and adds a "request to be released." *Id.* Because Gillison failed to comply with Rule 15(a) by moving for leave of court or by obtaining written consent by Respondents to file the amendment, the Court recommends that the District Judge strike the Amended Petition found at doc. #36. However, even if the District Judge were to allow the amendment to stand, Gillison's claims fail in this matter.

## DISCUSSION

### I. Standard of Review

Because Gillison is proceeding without counsel, this Court must construe his filings liberally.

3

*See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, at the same time, the Court should not act as the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

**II.     Analysis**

Here, Gillison challenges the administration (process) of his parole eligibility determination. Thus, although Gillison brought his Application pursuant to 28 U.S.C. § 2254, the Application is properly analyzed pursuant to 28 U.S.C. § 2241. "A motion pursuant to § 2241 generally challenges the *execution* of a prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001) (emphasis added); *see also Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). In his Application, Gillison alleges that he was denied due process in that he was entitled to, and did not receive, a hearing before the Colorado Parole Board, and that he was treated differently by the Parole Board based upon his alleged mental disabilities. Gillison seeks an immediate evidentiary hearing and the appointment of counsel to assist him in pursuing his constitutional claims.

    A.     Due Process

Gillison's primary complaint is that he was denied a hearing in February 2007 upon consideration of parole. That is, the entirety of Gillison's statement of his due process claim is as follows: "I was not afforded a proper hearing by the Colorado Board of Parole on February 20, 2007, at the so called . . .[sic] hearing I was not afforded (any and all information) that I had requested from Allen Stanley, chairman of the Colorado Board of Parole, in Pueblo, Colorado, so that I was [sic] know what the Board was going to use in order to consider my parole." Complaint at 5. Gillison does not raise any constitutional violations with respect to the parole board's decision to deny his

4

parole in February 2007. Nevertheless, construing his Application liberally as I must, I will join with Respondents in assuming that Gillison claims that the injury resulting from the lack of a hearing at the time of parole consideration is the Board's denial of parole in February 2007.

The threshold question in any due process analysis for a case like this is whether a liberty interest is implicated. *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7 (1979); *see also Shirley v. Chestnut,* 603 F.2d 805, 806 (10th Cir. 1979) (applying *Greenholtz* ); *Solomon v. Elsea,* 676 F.2d 282, 284 (7th Cir. 1982) ("It is axiomatic that before due process protections can apply, there must first exist a protect[a]ble liberty or property interest"). Here, the state parole board's wholly discretionary decision does not implicate a constitutional liberty interest.

For example, Gillison has no liberty interest in parole through the Due Process clause itself. *See Greenholtz,* 442 U.S. at 7 ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Malek v. Haun,* 26 F.3d 1013, 1015 (10th Cir. 1994). Gillison's interest in release "is indistinguishable from the initial resistance to being confined," and that interest was extinguished by his conviction and sentence. *Greenholtz,* 442 U.S. at 7; *see also Martinez v. Patterson,* 429 F.2d 844 (10th Cir.1970), *cert. denied,* 402 U.S. 934 (1971) (constitutional due process safeguards are not implicated in matters involving state parole hearings).

At the same time, a liberty interest in parole may be created if the state employs mandatory language in its statutory scheme. *Greenholtz,* 442 U.S. at 11-12, 99 S.Ct. 2100; *Board of Pardons v. Allen,* 482 U.S. 369, 375-78 (1987). However, Colorado's statutory language does not create such a liberty interest here.

Section 17-2-201 of the Colorado Revised Statutes governs the responsibilities, authority, and discretion of the Colorado Board of Parole. It sets guidelines to be followed when granting, denying,

5

or revoking parole. This entire section provides a clear and unambiguous description of the duties, responsibilities, and procedures of the Board. In the same vein, Section 17-2-201(9)(a) specifically sets forth the procedures to be followed when an inmate applies for parole, stating as follows:

> (I) Whenever an inmate initially applies for parole, the board shall conduct an interview with the inmate. At such interview at least one member of the board shall be present. Any final action on an application shall not be required to be made in the presence of the inmate or parolee, and any such action shall require the concurrence of at least two members of the board. When the two members do not concur, a third member shall review the record and, if deemed necessary, interview the Gillison and cast the deciding vote. Any subsequent application for parole shall be considered by the board in accordance with the provisions of section 17-2-201(4)(a).
> (II) The provisions of subparagraph (I) of this paragraph (a) shall also apply to all interviews of inmates who apply for parole pursuant to section 17- 22.5-303, who were sentenced for an offense committed on or after July 1, 1979.

Section 17-2-201(9)(a)(I) clearly sets forth the procedures to be followed from the initial application for parole to the resolution by the Board. No hearing is required under the procedures; therefore, Gillison has no protectible interest in having a hearing upon the Board's consideration of his parole. Notably, the undisputed facts show that Gillison had an interview with Allen Stanley, a Parole Board member, before the Board considered his request for parole; thus, the Board of Parole certainly met the requirements of Section 17-2-201(9)(a)(I).

Because Gillison has no liberty interest in parole under Colorado's system and thus is not entitled to due process protections, he has no claim which would entitle him to relief. *See, e.g., Maghe v. Koch,* No. 96-7060, 1997 WL 76014, at *3-4 (10th Cir. 1997) (unpublished) (citing *Greenholtz* and affirming the dismissal of a § 1983 complaint because state law created no liberty interest in parole); *Malek,* 26 F.3d at 1016 (citing *Greenholtz* and affirming the dismissal of a § 1983 complaint because state law created no liberty interest entitling inmate to due process protections); *Dock v. Latimer,* 729 F.2d 1287, 1291-92 (10th Cir. 1984) (citing *Greenholtz* and affirming dismissal of a § 1983 complaint based on failure to comply with state parole statute because there was no

violation of a federal constitutional right); *Shirley,* 603 F.2d at 807 (citing *Greenholtz* and affirming denial of relief in connection with denial of parole release because state law created no liberty interest in parole and thus due process protections were not applicable); *McCall v. Delo,* 41 F.3d 1219, 1221 (8th Cir. 1994) (affirming the denial of a § 2254 petition because by revoking a presumptive parole date the board had not deprived the inmate of a liberty interest in violation of due process); *Harrington v. Redman,* No. 91-1447, 1991 WL 193466, at *1 (6th Cir. 1991) (unpublished) (citing *Greenholtz* and affirming the dismissal of a § 2254 petition because state law created no liberty interest in parole and thus there was no right to due process); *Irving v. Thigpen,* 732 F.2d 1215, 1217-18 (5th Cir. 1984) (stating that there can be no § 1983 claims or habeas petitions based on the denial of parole because state law created no liberty interest in parole and thus there was no right to procedural due process); *Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir. 1979) (citing *Greenholtz* and affirming the dismissal of a § 1983 claim because state law created no protectable interest in parole and thus an inmate's due process claims were without merit).

Finally, to the extent that Gillison's due process claim may be substantive, rather than procedural, it likely fails. *See, e.g., Johnson v. Rodriguez,* 110 F.3d 299, 308 (5th Cir.), *cert. denied,* 522 U.S. 995 (1997) ("because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds"); *Jones v. Georgia State Bd. of Pardons & Paroles,* 59 F.3d 1145, 1150 (11th Cir. 1995) (rejecting a substantive due process claim because the inmate had no due-process protected liberty interest in parole); *Bailey v. Gardebring,* 940 F.2d 1150, 1157 (8th Cir. 1991) (affirming the denial of a substantive due process claim because the inmate had no liberty interest in parole and no fundamental right to parole). The Tenth Circuit has not directly addressed this issue in a published opinion, but in an unpublished opinion, the court cited *Greenholtz* and concluded there

7

was no substantive due process violation where there was no liberty interest in parole. *Reed v. Hinckley,* 1991 WL 268915, at *1 (10th Cir.1991) (affirming dismissal of a § 1983 claim); *see also Wildermuth v. Furlong*, 147 F.3d 1234, 1239, n. 8 (10th Cir. 1998).

Therefore, this Court recommends that the District Court deny Gillison's Application with respect to his due process claim.

B. Equal Protection

In his second claim, Gillison alleges that he was "denied the rights to [sic] has been afforded to other[s] that comes [sic] before the Colorado Board of Parole when petitioner was intentional [sic] singled out because of my mental disabilitys [sic], was denied the right to take part in state programs, because of my disabilitys [sic] . . . ." Application at 6. From these statements, the Court construes Gillison's second claim as alleging he was treated differently than other inmates during the parole process based upon his asserted mental disability.

The Equal Protection Clause prohibits the government from treating similarly situated individuals differently. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). However, disabled persons are a not a suspect class for purposes of equal protection analysis; therefore, rational basis scrutiny applies. *Id.* at 442-46; *Davoll v. Webb,* 194 F.3d 1116, 1145 (10th Cir.1999). Under this deferential standard of review, the court upholds a challenged prison policy or decision if it is reasonably related to a legitimate penological purpose. *Gwinn v. Awmiller,* 354 F.3d 1211, 1228 (10th Cir.), *cert. denied*, 543 U.S. 860 (2004); *see also Brown v. Zavaras,* 63 F.3d 967, 971 (10th Cir. 1995) (applying the rational basis standard to the treatment of a prisoner and stating that "[w]hen the plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis").

At the same time, to prevail on a claim that attacks the constitutionality of a state's action, a

plaintiff must detail the facts forming the basis of the claim. *Blinder, Robinson & Co. v. United States Securities & Exchange Comm'n,* 748 F.2d 1415, 1419 (10th Cir. 1984). A failure to provide such specific factual allegations renders the complaint vague and conclusory. *Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir. 1986). Vague or conclusory allegations are insufficient to state a claim for relief. *Swoboda v. Dubach,* 992 F.2d 286, 289-90 (10th Cir. 1993); *see also Sooner Prods. Co. v. McBride,* 708 F.2d 510, 512 (10th Cir. 1986) (conclusory allegations insufficient).

Here, Gillison fails to describe his alleged mental "disabilitys," identify inmates who have been treated differently, and indicate which "state programs" in which he was unable to participate. In fact, it is difficult to ascertain which "policy or decision" Gillison challenges for purposes of determining whether it is reasonably related to a legitimate penological purpose. Instead, Gillison's allegations are merely conclusory and do not form the factual basis necessary for an equal protection claim. Even pro se litigants must do more than make mere conclusory statements regarding constitutional claims. *See Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir.1995); *see also United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994) (holding that conclusory allegations are insufficient to support a claim for relief); *Petrick v. Maynard,* 11 F.3d 991, 995 (10th Cir. 1993) (holding that a pro se prisoner must do more than make conclusory allegations).

Even assuming the truth of Gillison's allegation that he was "denied the right to take part in state programs, because of my disabilitys [sic]," Gillison's conclusory allegations simply do not state a cause of action for which relief can be granted under an equal protection theory. Thus, this Court recommends that the District Court deny the Application with respect to Gillison's equal protection claim.

C. <u>Evidentiary Hearing</u>

Gillison requests "a complete evidentiary hearing before this Honorable Court as soon as

possible." Application at 9. Generally, a petitioner is "entitled to an evidentiary hearing if his allegations, if true and not contravened by the record, entitle him to habeas relief." *Walker v. Gibson,* 228 F.3d 1217, 1231 (10th Cir. 2000); *see also* 28 U.S.C. § 2254(e)(2) (limiting the circumstances in which a court reviewing a habeas corpus petition can conduct an evidentiary hearing). Gillison does not explain what evidence or materially disputed factual issues he believes would be illuminated by an evidentiary hearing. Thus, Gillison's request for an evidentiary hearing is properly denied.

D. Appointment of Counsel

Finally, Gillison requests "legal counsel be appointed to represent petitioner's rights before the court because of my mental disabilitys [sic], and any and all other relief that this Honorable Court deems proper and just under the United States Constitution...." Application at 9.

Indigent civil litigants have no constitutional or statutory right to be represented by a lawyer. *Merritt v. Faulkner,* 697 F.2d 761, 763 (7th Cir. 1983). Pursuant to 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." *See also Johnson v. Howard,* 20 F. Supp.2d 1128, 1129 (W.D. Mich. 1998) (a court may request counsel to represent an indigent plaintiff in an "exceptional case"). However, § 1915(e)(1) does not authorize "compulsory assignments of attorneys" or "coercive appointments of counsel." *Mallard v. United States District Court for the Southern Dist. of Iowa,* 490 U.S. 296, 310 (1989).

Whether to request counsel is left to the sound discretion of the trial court. *Rucks v. Boergermann,* 57 F.3d 978, 979 (10th Cir. 1995). "[T]he district court has broad discretion to appoint counsel for indigents ..., and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights." *Long v. Shillinger,* 927 F.2d 525, 527 (10th Cir. 1991) (applying 28 U.S.C. § 1915(d), amended and renumbered as § 1915(e)(1)) (internal quotation marks and citation omitted). In deciding whether to request counsel for an indigent civil

litigant, the district court should evaluate "the merits of a [litigant's] claims, the nature and complexity of the factual issues, and the [litigant's] ability to investigate the facts and present his claims." *Hill v. Smithkline Beecham Corp.,* 393 F.3d 1111, 1115 (10th Cir. 2004) (citations omitted). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Id.* (citation omitted). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Id.*

The court has given careful consideration to Gillison's request for appointed counsel and to all of the appropriate factors. As a *pro se* litigant, Gillison is afforded a liberal construction of his papers. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Gillison has thus far adequately expressed himself and presented his claims unaided by counsel. Upon review of Gillison's Application, the Court does not find sufficient reason to warrant the appointment of counsel. The Court is within its discretion in declining to request counsel to represent Gillison.

## **CONCLUSION**

Accordingly, and based on the foregoing, it is hereby RECOMMENDED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [construed as pursuant 28 U.S.C. § 2241] [filed March 9, 2007; doc #3] be **denied**, resulting in the dismissal, with prejudice, of this action against Respondents.

Dated at Denver, Colorado, this 12th day of February, 2008.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge